UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

MIDLAND PLASTERING CO., INC. and
WILLIAMS FUND PRIVATE EQUITY GROUP, INC.,

       Plaintiff,
v.                                                                                 Case No. 06-CV-1251

M&I MARSHALL & ILSLEY BANK and
UNITED NATION'S INSURANCE AGENCY INCORPORATED
a/k/a UNITED NATION'S INSURANCE AGENCY, INC.
a/k/a UNITED NATIONS INSURANCE AGENCY, INC.,,

       Defendants,
v.

FIRST CITY SERVICING CORPORATION,

       Intervening Plaintiff.
_____

# ORDER

Plaintiffs Midland Plastering Co., Inc., ("Midland") and Williams Fund Private Equity Group, Inc. ("Williams") brought suit against defendants M&I Marshall & Ilsley Bank ("M&I") and United Nation's Insurance Agency Incorporated ("UNI"), alleging breach of contract, conversion, and interference with contractual relations. Plaintiffs seek damages arising from the alleged improper disbursement of their funds by M&I to UNI pursuant to an irrevocable letter of credit. Intervening plaintiff, First City Servicing Corporation ("First City"), seeks to intervene in this suit, claiming it is an agent for WAMCO, which holds a blanket lien on all of Midland's assets, and to whom Midland has defaulted on a previous loan. This court finds that First City

meets the requirements for intervention of right as articulated in Fed. R. Civ. P. 24(a)(2), and thus grants First City's Motion to Intervene.

## I. FACTS

According to UNI, Midland contracted with the Lafayette School District for a project identified as Gypsum Drywall, Higginsville High School and Middle School Additions, Higginsville, MO. (UNI Countercl. Count 1 ¶ 2). UNI asserts that it, acting as agent for Evergreen National Indemnity Company ("Evergreen"), issued a performance and payment bond in the penal amount of $190,671, naming Midland as principal, Lafayette School District as obligee, and Evergreen as surety. (UNI Countercl. Count 1 ¶ 2). On May 31, 2006, as a condition to issuance of the bond, M&I, at Midland's request, established a $150,000 irrevocable letter of credit ("ILOC"), naming UNI as the beneficiary. (Am. Compl. Ex. A). Midland had a certificate of deposit with M&I that was worth more than $150,000; on May 30, 2006, Midland assigned M&I a security interest in that CD, as collateral for the ILOC. (M&I Reply Br. Supp. Mot. Dismiss. Ex. B at 6).

According to UNI, Midland breached its contract with Lafayette School District, thus requiring UNI, as agent for Evergreen (the surety), to have to perform pursuant to the performance and payment bond. (UNI Countercl. Count 1 ¶ 6). Accordingly, on August 24, 2006, UNI drew down $150,000 from the ILOC to help satisfy its obligations under the bond. (UNI Countercl. Count 1 ¶ 7).

Prior to UNI exercising the letter of credit, plaintiff Williams purchased all of Midland's stock on July 13, 2006. (Am. Compl. Ex. B). Midland claims that M&I

refused to change Midland's authorized signatures, and refused to forward Midland's funds to another bank after Midland terminated its contract with M&I and instructed M&I to forward Midland's funds on August 5, 2006. (Am. Compl. ¶¶ 11-12, 16-17). Midland further claims that UNI and M&I committed conversion when M&I disbursed Midland's $150,000 CD to UNI. (Am. Compl. ¶ 25-30). Plaintiffs have brought suit claiming breach of contract, conversion, and interference with contractual relations (in support of this last claim, Williams asserts it hired R.W.B. LLC to perform accounting services involving Midland, and then M&I induced R.W.B. to breach its contract with Midland, which R.W.B. subsequently did). (Am. Compl. Count 3). UNI has brought a counterclaim against Midland for funds Midland allegedly still owes under a general indemnity agreement UNI claims Midland executed on May 27, 2005, (as a condition to the issuance of the bond) which holds Midland and its now-former owners jointly and severally liable to Evergreen for all losses Evergreen incurs as a result of issuing the bond. (UNI Countercl. Count 1 ¶¶ 4, 8-9).

Into this foray enters First City (acting as servicing agent for WAMCO) on a Motion to Intervene. First City claims that prior to the 2006 sale of Midland to Williams Group, US Bank loaned Midland $283,335.62 on June 24, 2004. (Scherck Decl. Ex. A). Midland pledged all of its assets, both tangible and intangible, including accounts receivable, to U.S. Bank as collateral. (Scherck Decl. Ex. B). The loan and attendant liens were subsequently assigned to WAMCO on December 8, 2005. (Scherck Decl. Exs. C & D). At the time of the sale of Midland to Williams Group, the loan had not been satisfied, and it has not since been satisfied, and First

City (as WAMCO's agent) asserts a blanket lien over all Midland assets. Because Midland has defaulted on its loan, First City now seeks to intervene in this case between Midland and M&I and UNI. First City seeks to ensure that any funds Midland might recover from either M&I or UNI are then paid to First City to help satisfy the $172,960.68 that remains outstanding on the loan, as well as attorneys fees and declaratory relief. (First City Proposed Compl. at 4).

## II.  ANALYSIS

Under F.R.C.P. 24(a)(2), there are four requirements for intervention of right: (1) timeliness; (2) an interest relating to the subject matter of the main action; (3) at least potential impairment of that interest if the action is resolved without the intervenor; and (4) lack of adequate representation by existing parties. *Reid L. v. Illinois State Bd. of Educ.* 289 F.3d 1009, 1017 (7th Cir. 2002).

### A.  Timeliness

"The purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). First City's Motion to Intervene was filed before UNI had even filed its Answer, and before either side has filed any dispositive motions. Clearly no "terminal" is in sight.

There are four factors to be considered when determining the timeliness of a motion to intervene: "(1) The length of time the intervenor knew or should have known of his interest in this case, (2) the prejudice to the original parties caused by the delay, (3) the resulting prejudice to the intervenor if the motion is denied, and (4)

any unusual circumstances." *Shea v. Angulo*, 19 F.3d 343, 348-49 (7th Cir. 1994) (citing *South v. Rowe*, 759 F.2d 610, 612 (7th Cir. 1985)). First City received a copy of the Amended Complaint on November 14, 2007 (Scherck Decl. ¶ 7), and First City filed its Motion to Intervene on January 11, 2008. There is no set time frame that must be complied with, and it would certainly appear that First City acted within a reasonable amount of time. Also, as previously stated, First City filed its motion prior to UNI filing its answer, so there certainly won't be any prejudice to the original parties based on the timing of the filing. There would, however, be resulting prejudice to First City if the motion were denied – this will be examined more thoroughly below in the context of First City's interest in the litigation. As to the fourth factor, there are no unusual circumstances pertaining to timing in this case. Based on the foregoing, it is clear that First City's motion meets the timeliness requirement.

**B.     Interest in the Subject Matter of the Litigation**

In order for the movant's interest to satisfy Rule 24(a)(2), it must be "a direct, significant legally protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). While it does not have to rise to the level of a property right, it must be more than a "betting interest" in the outcome of the case. *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380-81 (7th Cir. 1995) (citations omitted). A situation where an intervenor has only a "betting interest" is one where "a third party who has some outstanding monetary claim from one of the parties attempts to intervene to ensure that the outcome of the case preserves as much of

-5-

its claim as possible." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 322 (7th Cir. 1995). In *Reich*, the court points to *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201 (7th Cir. 1982) as an example of a case where the would-be intervenor had only a "betting interest." The *Reich* Court, summarized *Meridian* as follows:

> [T]wo brothers were entitled to the profits of a partnership, but were not partners; they sought to intervene in an action regarding the partnership agreement itself. We upheld the district court's denial of the brothers' petition to intervene. We held that while the amount they would receive might be affected by the interpretation of the partnership agreement, they had absolutely no legal interest in the agreement itself.

64 F.3d at 322-23 (citing *Meridian*, 683 F.2d at 204). Unlike the brothers in *Meridian*, First City does not have merely an expectant interest in Midland's profits, but rather it has a secured interest in the assets of Midland - those very assets at stake in the case at hand. *See gen. Zurich Capital Markets Inc. v. Coglianese*, 236 F.R.D. 379 (N.D.Ill. 2006). Case law makes it clear that lienholders do have a sufficient enough interest to act as intervenors. *Curtis v. Sears, Roebuck & Co.* 754 F.2d 781, 782-83 (8th Cir. 1985) (party holding lien in monies claimed by plaintiff permitted to intervene in plaintiff's suit against defendant for those monies); *Lalic v. Chicago, B. & Q. R. Co.*, 263 F.Supp. 987, 988 (N.D.Ill. 1967) (same). As a lienholder, First City's interest in the case is far more than a betting interest.

### C. Potential Impairment of Intervenor's Interest

Not only must the intervenor have an interest in the subject matter of the litigation, but that interest must also be at least potentially subject to impairment if the action were to be resolved without the intervenor. "The existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corp.*, 683 F.2d at 204 (citations omitted). In the 7th Circuit, "[p]otential foreclosure is measured by the general standards of stare decisis." *Id.* (citations omitted).

Midland holds that First City's ability to bring a separate suit against Midland sufficiently protects First City's interest. To support this prospect, Midland cites *Glyn v. Roy Al Boat Management Corp.*, – a Hawaii district court case in which the court mentions *in dicta* that the disposition of the lawsuit does not affect the intervenor's ability to protect his interest if, as alleged, the plaintiff is legally obligated to turn over certain funds from the judgment to the intervenor. 897 F. Supp. 451, 453 (D.Hawaii 1995). First City, on the other hand, points to cases in which courts actually *held* that intervention by a party whose only interest was a lien on the proceeds was indeed proper. *See Lalic*, 263 F. Supp. at 988; *In re Larkham*, 27 B.R. 859, 861 (Bankr. D.Vt. 1983); *U.S. v. Arneson*, 54 F.R.D. 429 (W.D.Wis. 1971).

Given the fact that neither Midland nor Williams have attempted to pay off the defaulted loan, it is clear that when it comes to the repayment of the loan, plaintiffs and First City have divergent interests. Additionally, First City's stake in plaintiffs'

-7-

recovery lessens the financial incentive for plaintiffs to pursue this case as zealously as would be the incentive absent First City's claim. Given these considerations, not allowing First City to intervene would potentially, if not likely, impair First City's interest.

### D. Adequacy of Representation

According to the Supreme Court: "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10 (1972). Midland asserts that First City cannot even meet this minimal burden, because plaintiffs and First City have the same goal for the conclusion of the case – for Midland to recover as much as possible from the defendants. First City disputes this point, and argues it and Midland have diverging interests because Midland does not want to pay the lien, and Midland wants to also prove exemplary and punitive damages based on allegations of tortious activity by defendants, and First City is only interested in enforcing its lien.

According to the 7th Circuit, "where it is established that the parties have the same ultimate objective in the underlying action, the intervenors must demonstrate, at the very least, that some conflict exists." *Meridian Homes Corp.*, 683 F.2d at 205. Whether or not "some conflict exists" is a factual question left to the court. Clearly, as detailed above, "some conflict exists" between First City and plaintiffs, as evidenced by plaintiffs here-to-fore unwillingness to bring the loan current, and the

fact that First City's claim lessens plaintiffs financial incentive (but not First City's) in plaintiffs case against M&I and UNI.

## III. CONCLUSION

The burden is on the party seeking an "intervention as of right" to show all four criteria have been met, *Reid L. v. Illinois State Bd. of Educ.* 289 F.3d 1009, 1017 (7th Cir. 2002). First City has shown that, given its timely motion, its secured interest in some of the funds at issue, and its divergence of interests with plaintiffs, it does indeed meet all four criteria of Fed. R. Civ. P. 24(a)(2).

Accordingly,

**IT IS ORDERED** that First City's Motion to Intervene be and the same is hereby **GRANTED.**

Dated at Milwaukee, Wisconsin, this 17th day of September, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge